Filed 3/11/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DENNIS K. HAUCK, | B247351 |
| Appellant, | (Los Angeles County Super. Ct. No. BF030864) |
| v. | |
| MICHAEL L. RIEHL, | |
| Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, David S. Cunningham, Judge. Reversed and remanded with instructions.

Dennis K. Hauck, in pro. per., for Appellant.

Michael L. Riehl, in pro. per., for Respondent.

A five-year-old child lives with her mother, Brook Bennett-Hauck, and her stepfather, Dennis Hauck ("stepfather"). Her father, Michael Riehl ("father"), has visitation rights. After a confrontation between the two men while father was picking up the child for a visit, father sought an injunction against stepfather pursuant to the provisions of the California Domestic Violence Prevention Act, Family Code[1] section 6200 et seq. ("DVPA").

Stepfather maintained that the superior court had no jurisdiction to issue the requested injunction, since he and father did not have one of the relationships specified by the DVPA. The court agreed that the two men alone did not share a specified relationship, but found that stepfather's inclusion of the child in the petition as a person to be protected provided the necessary nexus to confer jurisdiction on the court. We disagree, and so reverse the order.

FACTUAL AND PROCEDURAL HISTORY

Initially, an action was filed to determine the paternity of the minor child. Father was the petitioner in that case, and mother the respondent. Stepfather, who was married to mother, was involuntarily joined in the paternity case as a "Claimant."

On August 8, 2012, father filed a "Request for Domestic Violence Restraining Order." In it he requested a "stay away" order, pursuant to which stepfather would be ordered to stay away from father, his home, job, vehicle and "the children's school or child care." It also included a request that stepfather stay away from the minor child's home[2] and that he be ordered not to do any of the following to father or to the minor child: "Harass, attack, strike, threaten, assault (sexually or otherwise), hit, stalk, molest, destroy personal property, disturb the peace, keep under surveillance or block

---

[1]     All further statutory references are to the Family Code unless otherwise indicated.

[2]     The court later removed, with the concurrence of father, the stay away order and harassment provisions of the temporary restraining order ("TRO") in regard to the minor child. It was admitted by father that the minor child lived with mother and stepfather, and that there were no allegations that father ever abused the minor child.

movements." Furthermore, he sought an order that stepfather not "contact [him] either directly or indirectly, in any way, including, but not limited to, by telephone, mail or e-mail or other electronic means." The court issued a TRO against stepfather.

On August 30, 2012, the court denied stepfather's motion to dissolve the TRO and to dismiss the case, which request was brought on the grounds that the court had no jurisdiction under the DVPA to hear the case, since father was not a protected person under section 6211.

On September 20, 2012, the court conducted a hearing on the merits. Stepfather argued that because he and father were never spouses, cohabitants, in a dating relationship, children of a party subject to the Uniform Parentage Act, or related by consanguinity or affinity, father does not qualify for a restraining order under the DVPA. Father contended that he and stepfather were related by consanguinity and affinity, as they were in-laws, of a sort. The trial court rejected the contention. The court noted, however, that father had sought protection for his minor child in his application for the restraining order, and the child is a person described by section 6211. The court reasoned that, "under the law revision commission comments, the genesis of the domestic violence protection act was expanded to include protection of a child, and it was unequivocal that that would include protection of the child. [¶] And once we get into an allegation that is seeking protection of the child, I think it then does create the relationship . . . ." The court acknowledged that the circumstance of the instant case "doesn't fit neatly into the express provisions," but stated, "when I look at the law revision commission comments and the notion that seeking protection for the child was certainly an intent behind this statute, there is an allegation in the declaration that seeks to also include the child. . . . [¶] There is clearly a relationship to that child by virtue of marriage with the [mother]. I think this is one of those instances where the legislative intent would have allowed the court based on judicial economy because it would be elevating form over substance. . . .

3

[¶] So I do think that this type of action is intended under the law revision commission comments, and that will be the court's ruling. . . ."[3]

Consequently, the court granted father's request and issued a permanent injunction against stepfather, which was to remain in effect for five years. That order provides as follows:

(1) Stepfather is prohibited from engaging in any kind of personal contact with the person of father;

(2) Stepfather must stay at least 100 yards away from father's person, home, office, school, and vehicle;

(3) Stepfather must not harass, strike, threaten, assault, hit, follow, stalk, molest, destroy personal property, disturb the peace, keep under surveillance, or block father's movements;

(4) Stepfather must stay at least 100 yards away from the minor child's school or day care;

(5) Stepfather is prohibited from owning a gun or other firearm, or ammunition; and

(6) Father is allowed to make a recording of any incidents that may incur in the future for use in enforcing the injunction.

Stepfather timely filed his Notice of Appeal.


STANDARD OF REVIEW

The sole issue on appeal concerns the interpretation of the statutory language of the DVPA. The construction and application of a statute is a matter of law which this court reviews de novo. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562.) "The rules governing statutory construction are well settled. We begin with the fundamental

---

[3] Contrary to the court's statement, there were no allegations in the petition of any act of abuse as defined in section 6203 against the minor child. The only order sought which referenced the child was a "stay-away" from the child's school, where custody exchanges for visitation purposes occurred.

4

premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] 'In determining intent, we look first to the language of the statute, giving effect to its "plain meaning."' [Citations.] Although we may properly rely on extrinsic aids, we should first turn to the words of the statute to determine the intent of the Legislature. [Citation.] Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*Ibid.*)

## DISCUSSION[4]

Section 6301 provides that a protective order may be granted under the DVPA "to any person described in Section 6211, including a minor . . . ." The persons described in section 6211 include:

"(a) A spouse or former spouse.

"(b) A cohabitant or former cohabitant as defined in Section 6209.

"(c) A person with whom the respondent is having or has had a dating or engagement relationship.

"(d) A person with whom the respondent has had a child, where the presumption applies that the male parent is the father of the child of the female parent under the Uniform Parentage Act.

"(e) A child of a party or a child who is the subject of an action under the Uniform Parentage Act, where the presumption applies that the male parent is the father of the child to be protected.

"(f) Any other person related by consanguinity or affinity, within the second degree." (§ 6211.)

---

[4] Father asserts that stepfather is in contempt of court and that, pursuant to *Knackstedt v. Superior Court* (1947) 79 Cal.App.2d 727, this appeal should be dismissed. The record reflects that while a contempt citation was issued on September 21, 2012, it was recalled on February 22, 2013, the same day stepfather filed his Notice of Appeal. We therefore deny father's dismissal request.

The trial court properly found that father is not a "person" listed in section 6211. While father contended in the trial court that there is "affinity" between himself and stepfather as "they are akin to in-laws," the statutory definition of affinity does not permit father's creative expansion of the concept.[5] Indeed, father abandons this argument on appeal.

Instead, father points to section 6211, subdivision (e) which, he posits, "states that domestic violence is abuse perpetrated against a child of a party. [Father] alleged in his moving papers and in open court that he was not just requesting protection under the DVPA for himself, but also for his child." The trial court grounded its decision to issue the restraining order on this notion of protection of the child from abuse, even though no evidence of stepfather's abuse of the child was presented to the court.

The court correctly noted that if a minor child is "abused" as defined in section 6203, he or she is a protected person pursuant to section 6211, subdivision (e), and therefore authorized to bring an action under the DVPA. A petition can be brought by a parent as the natural guardian of a minor child, by a guardian ad litem appointed by the court, or perhaps in conjunction with the parent's own claim, if the petitioning party were himself a protected person under section 6211. But, in the present case father did *not* bring the action on behalf of the minor child, was *not* a protected person under section 6211 and did *not* make any allegations in his petition of any "abuse" which stepfather committed against the minor child. The only abuse alleged and testified to by father was abuse directed at him by stepfather while the child was not present.[6] Moreover, even if

---

[5]  Section 6205 defines affinity as follows: "'Affinity.' When applied to the marriage relation, signifies the connection existing in consequence of marriage between each of the married persons and the blood relatives of the other."

[6]  In his declaration in support of a protective order, father described as "previous abuse" a single instance when the minor child was present: "Late last year, . . . [d]uring [a] custody transition, . . . . [stepfather] sarcastically stated to me that he wanted to thank me for joining him as a party to this litigation because that means 'I now have one-third custody rights to [the minor].' He clapped his hands together in mock applause and again

6

father had brought the petition on behalf of the child, the court would be authorized to issue an order restraining stepfather's interactions with the child, not with father. In short, because father was not a protected person under the DVPA, the trial court was not authorized to grant him the protective order here at issue.

Father maintains that even if the trial court had no jurisdiction to issue the protective order, the error was harmless because stepfather presented no evidence to counter the allegations of father's application. We must disagree. If the court lacked jurisdiction under the DVPA, it did not have the power to issue any DVPA orders, no matter what evidence was or was not presented by the parties to the action. (See *Valenta v. Regents of University of California* (1991) 231 Cal.App.3rd 1465, 1470, fn. 2 ["It is axiomatic that a judgment entered by a court which lacked jurisdiction is void and must be reversed"].) Father's obvious remedy is to file a civil harassment action under Civil Code section 527.6.

---

said, 'Thank you.' Though his statement was absurd, it is insight into what I believe is [his] deluded and irrational thinking." This conduct does not constitute abuse against the child as that term is defined in section 6203, which provides: "For purposes of this act, 'abuse' means any of the following: [¶] (a) Intentionally or recklessly to cause or attempt to cause bodily injury. [¶] (b) Sexual assault. [¶] (c) To place a person in reasonable apprehension of imminent serious bodily injury to that person or to another. [¶] (d) To engage in any behavior that has been or could be enjoined pursuant to Section 6320."

DISPOSITION

The order is reversed and the case is remanded to the trial court, which is directed to dissolve the injunction and dismiss the case.

CERTIFIED FOR PUBLICATION IN THE OFFICIAL REPORTS

MINK, J.[*]

We concur:

MOSK, ACTING P. J.

KRIEGLER, J.

---

[*]     Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8