Filed 11/13/23  Motley v. Lugo CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ALEXIS MOTLEY,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>THOMAS LUGO,<br><br>    Defendant and Appellant. | B318519<br><br>(Los Angeles County Super. Ct. No. 21LBRO02086) |

APPEAL from an order of the Superior Court of Los Angeles County, Reginald Neal, Judge. Affirmed.

Law Office of Kevin Lemieux and Kevin Lemieux for Defendant and Appellant.

Bare Law and Robert Bare for Plaintiff and Respondent.

## INTRODUCTION

Thomas Lugo (father) appeals from a two-year restraining order, issued under the Domestic Violence Prevention Act (Fam. Code § 6200, et seq.), prohibiting him from harassing his child.[1] The trial court issued the restraining order at the request of the child's mother, respondent Alexis Motley (mother). Father contends reversal is required for three reasons: (1) the trial court denied mother's application to be appointed the child's guardian ad litem, but purportedly permitted mother to act as though she held that title in the restraining order proceedings; (2) substantial evidence does not support the trial court's finding that abuse of the child occurred; and (3) the trial court abused its discretion by granting the restraining order. For the reasons discussed below, we reject father's contentions and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother and father are the parents of the child, who was born in April 2016. They separated before the child was born. At the time of the underlying proceedings, mother and father shared joint legal and physical custody of the child.

At some point after mother and father separated, father began dating Sydney Coleman. They eventually moved in together, became engaged, and had a child. Father and Coleman separated on December 8, 2021.

In November 2021, mother filed a request for a domestic violence restraining order on behalf of the child. She requested

---

1     All further undesignated references are to the Family Code. To protect the personal privacy interest of their child, we do not use his name. (Cal. Rules of Court, rule 8.90(b)(1).)

personal conduct and stay-away-orders. She also requested sole legal and physical custody of the child.

In support of her request, mother submitted her own declaration and the declaration of Coleman. Mother declared that on October 27, 2021, Coleman called mother to inform her of an incident involving the child that "resulted in a police visit to their home." She declared Coleman "indicated that there were several other incidents surrounding homework time, wherein [father] would yell at [the child], stand over him to physically intimidate him, threaten to strangle him, and grab him by the back of the neck to push his face into his homework[ ]." Mother further declared the child informed her "that his father grabbed him by the neck." She concluded: "[The child] has begun having behavioral issues, such as refusing to eat, stress-induced vomiting, fear of going to his father's house displayed by crying and refusal to go."

Coleman declared she shared a residence with father, which resulted in her forming a relationship with the child during the child's visitation periods with father. She stated she "recently witnessed [father] being physically abusive towards [the child], wherein he would tower over [the child] so as to physically intimidate him, as well as grab him by the back of the neck to push his face into his homework." She also witnessed father "yelling at the child and threatening to strangle him if he did not do his homework correctly." She further declared that the daughter she has with father had recently been placed under the custody of child protective services "as a result of [father's] actions." (Bold text omitted.)

The trial court granted a temporary restraining order until the scheduled hearing. It denied mother's application to be

3

appointed guardian ad litem. It explained in the order that appointing mother "presupposes the merits of the case," but "[m]other can pursue this restraining order on her own behalf with [the child] as a protected person."

In opposition to mother's request for a restraining order, father submitted a declaration. He declared mother "has been trying to impede my relationship with [the child] since the day he was born." In response to the allegations of physical abuse, he declared: "I have never hit or choked my son [ ]. One time in April or May 2021, [the child] was misbehaving and refusing to listen, so I put him in timeout. [The child] refused to go to timeout, so I moved him to timeout by his shoulder. [The child] served his timeout and has never refused to serve a timeout since that day. I was not forceful or abusive in any way with [the child] and this has never happened on any other occasion." Father also detailed alleged physical abuse by Coleman against him, stating Coleman's "domestic violence against me has included hitting, kicking, choking, use of weapons, and verbal abuse in front of the children." Because of this abuse, father "obtained a one year restraining order protecting [him] from [ ] Coleman."

On January 6, 2022, the trial court held a hearing. Mother, father, and Coleman testified consistent with their declarations. For example, Mother testified the child "would tell me repeatedly that he didn't want to go to his dad's house, and he would cry. He began to act out. We had issues of vomiting due to stress, to where we had to take him to the doctor to make sure that he was okay." Coleman testified she "witnessed physical abuse [of the child] more than once." She then recounted the most recent incident: "It was during a lot of [the child's] schoolwork time, after school, [father] would lose his patience too quickly and

4

would use his hands to, like, slap [the child's] head, like, cock his hand back and slap the top of his head. Using his hands to manipulate forcefully [the child's] head towards, like, his paperwork or towards the alphabet that we had on our wall." In response, the child "would shake, cry. He would very visibly show fear that he was scared and uncomfortable." Another incident involved teaching the alphabet and father told the child "'You better get it correct or, so help me God, I will strangle you.'" Father testified he never hit or choked the child, and "all the physical abuse and emotional abuse was [Coleman] toward [him]."

At the conclusion of testimony, the trial court made the following findings: "I do find [ ] Coleman credible. I believe that obviously she has a bias, a motivation to come in here and tell the court some of the allegations that she's made. But I do find that she is credible to the point to where I believe some type of abuse has happened." The trial court, therefore, concluded: "[B]ased on the evidence and the testimony presented and based on the court's determination of the credibility of the witnesses that [mother] has proven by [a] preponderance of the evidence that [father's] conduct as detailed at the hearing and in the evidence submitted constitutes abuse as defined in Family Code section 6203 and 6320."

The court granted a two-year restraining order to expire at midnight on January 6, 2024. The order prohibits father from doing any of the following acts to the child: "Harass, attack, strike, threaten, assault (sexually or otherwise), hit, follow, stalk, molest, destroy personal property, keep under surveillance, impersonate . . . , block movements, annoy by phone or other

5

electronic means . . . ., or disturb the peace."[2] The trial court also attached to the restraining order a "Child Custody and Visitation Order[.]" That order granted mother sole legal and physical custody of the child, with professionally supervised visitation for father. Father is not to travel with the child without mother's permission or court order. The court further ordered father to attend 26 weeks of anger management.

Father timely appeals.

## DISCUSSION

### A.    Guardian Ad Litem

Father contends the trial court abused its discretion by permitting mother to pursue the restraining order on the child's behalf despite denying her application to be appointed guardian ad litem for the child. We disagree.

Section 6301 provides that a domestic violence restraining order may be granted under the DVPA "to any person described in Section 6211, including a minor . . . ." Under section 6211, subdivision (e), "'[d]omestic violence' is abuse perpetrated against: . . . [a] child of a party . . . ." Mother originally listed the child's name under the "Name of Person Asking for Order" on the notice of court hearing form. (Bold Text Omitted.) The court crossed out the child's name, however, and inserted the mother's name in its place because mother was the person seeking the order on behalf of her child. Allowing mother to bring the request for a restraining order on the child's behalf is not, as father contends, inconsistent with denying her application to be appointed as a guardian ad litem. Such an appointment is

---

2      The restraining order does not include a "no-contact" order or a "stay-away" order.

6

unnecessary because "[a] petition can be brought by a parent as the natural guardian of a minor child, by a guardian ad litem appointed by the court, or perhaps in conjunction with the parent's own claim, if the petitioning party were himself [or herself] a protected person under section 6211." (*Riehl v. Hauck* (2014) 224 Cal.App.4th 695, 701.) The trial court, therefore, properly permitted mother to pursue her action under the DVPA as the natural guardian of the child she sought to protect.

**B.    Substantial Evidence Supports the Trial Court's Finding of Abuse**

Father next contends substantial evidence does not support the court's factual finding that "some type of abuse" of the child occurred. In support of this assertion, father relies on the trial court's finding that Coleman "has a bias" and cites evidence in the record supporting his view that Coleman was not an impartial witness. We reject father's argument because it disregards the standard of review. As the reviewing court, "[w]e do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) Instead, we view the record in the light most favorable to the trial court's findings and determine whether the findings are supported by substantial evidence. (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 992.) As discussed below, the record contains sufficient evidence to support the trial court's finding of abuse.

Under the DVPA, "'abuse'" includes "intentionally or recklessly caus[ing] or attempt[ing] to cause bodily injury" or "plac[ing] a person in reasonable apprehension of imminent serious bodily injury to that person or to another." (§ 6203, subds. (a)(1) & (a)(3).) As noted above, Coleman testified she witnessed

physical abuse "more than once" including when father "slap[ped] the top of [the child's] head." She also testified she witnessed father intentionally push the child off his bike. Father also, according to Coleman, threatened to strangle the child if he did not correctly recite the alphabet.

Father argues Coleman's testimony should not be credited because she was not an objective witness based on the following facts: Coleman lived with father for almost three years; an incident occurred on October 17, 2021 where Coleman hit and choked father, slammed his head into a wall, and threatened him with a knife; after the October 2021 incident, father ended the relationship with Coleman; on November 17, 2021, father obtained a temporary restraining order protecting him against Coleman; a one-year restraining order protecting father against Coleman was granted on December 8, 2021; and Coleman contacted mother about the alleged abuse of the child, and, shortly after, Coleman lived with mother for approximately two weeks. Based on father's testimony, the trial court acknowledged Coleman "obviously [ ] has a bias," but ultimately found she was "credible to the point where [the court] believe[d] [that] some type of abuse has happened." We will not disturb the trial court's credibility determination. (*In re Dakota H.*, *supra*, 132 Cal.App.4th at p. 228.)

Father also argues substantial evidence does not support the trial court's finding of abuse because the Department of Children and Family Services (the Department) did not get involved. Father relies on mother's testimony that she made two complaints to the Department of alleged abuse but, after an investigation, the Department found mother's allegations were "inconclusive." We reject father's argument for two reasons. First,

8

the record is devoid of evidence detailing the Department's investigation, including whether it interviewed mother's key witness, Coleman, about the alleged abuse. Second, different standards apply in dependency proceedings and restraining order proceedings. (Compare Welf. & Inst. Code § 300, subd. (a) [the juvenile court may assume jurisdiction over a child when "[t]he child has suffered, or there is substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian"] with § 6300, subd. (a) [a court may issue a restraining order under the DVPA "if an affidavit or testimony or any additional information provided to the court . . . shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse"].)

The only issue before the trial court here was whether, based on the totality of the circumstances (§ 6301, subd. (c)), mother demonstrated "reasonable proof of a past act or acts of abuse." (§ 6300, subd. (a).) Although the Department did not substantiate mother's allegations, the trial court found Coleman's testimony of physical abuse credible. Under section 6300, subdivision (a), that is sufficient to support the issuance of a restraining order on the child's behalf. We therefore conclude the trial court's finding of abuse is supported by substantial evidence.

## C. The Trial Court Did Not Abuse its Discretion by Granting the Restraining Order

Father alternatively contends that even if the trial court's factual finding of abuse was supported by substantial evidence, the court abused its discretion by granting the restraining order because the court recognized the abuse was a mistake that would be done differently if father were given the opportunity. As

9

discussed below, this argument both mischaracterizes the record and ignores the plain language of the DVPA.

First, the trial court opined on the likelihood father would handle things differently if given the opportunity, but did not, as father contends, make any definitive statements. Specifically, at the conclusion of testimony, the trial court addressed father and stated: "So I do believe . . . that you did commit some type of abuse towards your child. I think if you *probably* had a chance to do it all over again, I'm sure you would *probably* handle it differently. But I don't believe that we should cut off communication between [father] and [the child], but I do think that we should probably consider some type of monitored visitation." (Italics added.)

In any event, as noted above, the trial court may issue a restraining order under the DVPA upon "reasonable proof of a past act or acts of abuse." (§ 6300, subd. (a).) Thus, a finding of probability of future abuse is not required under the DVPA. (See *Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 783 ["the trial court was not required to find a probability that [defendant] would commit future abuse before issuing a restraining order under section 6300"].)

We acknowledge the trial court opined that father "probably got emotional, lost his control, but just because he d[id] that, doesn't make him a bad father, he just made a mistake." But the trial court also found father did "commit some type of abuse towards [his] child[,]" a finding which is supported by substantial evidence as discussed above. Thus, the court properly exercised its discretion by issuing a personal conduct restraining order prohibiting father from, among other things, harassing or

10

attacking the child, but declining to impose a no-contact order or stay-away order.

## DISPOSITION

The Restraining Order After Hearing (Order of Protection), filed January 6, 2022, is affirmed. Mother is awarded her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, P. J.

We concur:

COLLINS, J.

ZUKIN, J.

11