Filed 2/8/24  Sentance v. Brown CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| RENEE SENTANCE, | B324321, consolidated with B325614 |
| Plaintiff and Respondent, | |
| | (Los Angeles County Super. Ct. No. 22PSRO01491) |
| v. | |
| ROBIN BROWN, | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendant and Appellant. | |
| | NO CHANGE IN THE JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on February 1, 2024, be modified as follows:

1. On page 3, after the last sentence in Section I.C. of Facts and Procedural Background that ends "to be used for the Bonita property," add as footnote 3 the following footnote:

> 3    In a petition for rehearing, Brown (through Sofris) argues that the facts set forth in this paragraph are inaccurate because (1) the settlor of the RJN Trust is Brown's "former husband" (rather than father), and (2) the trial court never explicitly found that father was the RJN Trust's "settlor." We reject these arguments. Brown's first point rests on a misreading of the reporter's transcript where the trial court referred to "the husband's trust." When read in context, it is reasonable to conclude that "the husband" refers to father (who is mother's husband); there is no mention anywhere in the record of Brown's husband. Indeed, and as noted in the text, the notion that Brown's former husband was in charge of the RJN Trust is wholly contradicted by Sofris's own statements at the hearing, where Sofris repeatedly indicated that "the family wanted . . . money dispersed to them." Even if the record were ambiguous on this point, we are entitled to construe that ambiguity in the light most favorable to the trial court's ruling. Brown's second point rests on a misunderstanding of our task on appeal, which is to determine whether substantial evidence supports the trial court's factual findings—whether express or implicit; the absence of an express factual finding is of no moment.

2. On page 12, the footnote beginning "Brown makes passing reference" and previously numbered footnote 3 is deleted.

\*     \*     \*

There is no change in the judgment.

Appellant's petition for rehearing is denied.

_____

LUI, P. J.        ASHMANN-GERST, J.        HOFFSTADT, J.

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| RENEE SENTANCE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>ROBIN BROWN,<br><br>        Defendant and Appellant. | B324321, consolidated with B325614<br><br>(Los Angeles County Super. Ct. No. 22PSRO01491) |

APPEAL from orders of the Superior Court of Los Angeles County, Geanene M. Yriarte, Judge.  Affirmed.

Action Legal Team and Michael N. Sofris for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

*＊ ＊ ＊ ＊ ＊ ＊*

In the litigation of a domestic violence restraining order, a trial court entered a provisional restraining order and disqualified the restrained person's attorney at the hearing on whether to extend the provisional order. The restrained person (through her disqualified counsel) challenges the disqualification order as well as two aspects of the provisional restraining order. These challenges are largely based on facts and law not brought to the trial court's attention, and they otherwise lack merit. Accordingly, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**I.    Facts[1]**

**A.    *The family***

Robin Brown (Brown) and Renee Sentance (sister) are adult sisters. Their parents are Robert Brown (father) and Grace Brown (mother). Brown has a teenage daughter.

**B.    *The family's properties and Brown's living arrangements***

Through the 2014 Brown Family Trust (the 2014 Trust), father and mother own two residential properties in La Verne, California. One is located on Bonita Avenue (the Bonita property); the other, on Winterhaven Drive (the Winterhaven property). Father was the trustee of the 2014 Trust.[2]

---

[1]    Consistent with substantial evidence review, we set forth the facts in the light most favorable to the trial court's ruling.

[2]    Although the parties did not introduce documentation corroborating that the Bonita property was held by the 2014 Trust, that finding may be reasonably inferred by the parties'

2

For many years, Brown and her daughter lived in the Bonita property.

**C.** *The role of attorney Michael Sofris (Sofris) as trustee for a different family trust*

Sofris is an attorney licensed in California. He is the trustee of the RJN Family Trust (RJN Trust), which is controlled by "the [Brown] family." During or before the summer of 2022, "the family asked" Sofris to disburse money from the RJN Trust to be used for the Bonita property.

**D.** *Brown's care of parents, recent thefts and vandalism of the properties, and "violent" outbursts*

In 2021 and 2022, Brown was expected to care for father and mother, who lived in the Winterhaven property. Brown did a poor job, as both parents were filthy and covered in feces; Brown also used methamphetamine in the home. When sister learned of this mistreatment, she moved father and mother into a "24/7" assisted care facility.

During this time period, Brown stole guns, cash, and jewelry from the Bonita and Winterhaven properties. On one occasion, Brown turned on the gas line in the kitchen of the Winterhaven home so it flooded with natural gas, and then left the home.

When sister confronted Brown about these incidents, Brown got "violent" and started "screaming at [sister] and pushing [her]." Brown also caused a scene at the assisted living facility while visiting mother and father.

---

reference to both properties being held by the parents and having the same status.

### E. *Powers of attorney*

In April 2022, father executed a durable power of attorney granting sister the authority to "manage[] or maintain[] any real property" in which he had an interest.  He also resigned as trustee of the 2014 Trust, and named sister as the trustee.

### F. *Earlier petitions*

In July and August 2022, sister filed two petitions for restraining orders to protect father, sister, and sister's family. Both were filed in San Bernardino County Superior Court, and both were denied on the ground that they were filed in the wrong venue.

## II. Procedural Background

### A. *Petition*

On August 9, 2022, sister filed a petition for a restraining order in Los Angeles County Superior Court that would require Brown (1) to stay away from father, sister, and sister's family; (2) to vacate the Bonita property; and (3) to stay away from the Bonita and Winterhaven properties.  In support, sister submitted a declaration detailing the elder abuse outlined above as well as the theft and vandalism occurring at the properties.

### B. *Temporary restraining order (TRO)*

On August 10, 2022, the trial court issued a TRO that ordered Brown (1) to stay away from father, sister, and sister's family; (2) to vacate the Bonita property, although her daughter could continue to live there with another adult; and (3) to stay away from the Bonita and Winterhaven properties.

Brown moved out, and her daughter continued to live in the Bonita property with another adult.

## C. *Hearing on restraining order*

After Brown—with Sofris as her attorney—filed an opposition to sister's petition as well as a petition seeking a new TRO to dissolve the prior TRO, the trial court convened a hearing on October 6, 2022 to consider the competing petitions (the October 2022 hearing).

Sofris acted as Brown's attorney at the hearing.

### 1. *Sofris is disqualified as Brown's counsel*

During pre-hearing settlement talks, Sofris demanded that—as part of settling the dispute—sister and father repay the funds he, as trustee of the RJN trust, had disbursed to them from the trust. Sister brought the issue to the trial court's attention, and noted that it appeared that Sofris had a conflict of interest. The court agreed that "there is a conflict" and disqualified Sofris from continuing to represent Brown.

The court granted Brown time to find new counsel, and continued the hearing on the permanent restraining order to November 1, 2022.

### 2. *TRO is modified*

Sister agreed that Brown could move back into the Bonita property, but only if a third party could first conduct a walk-through of the property to assess its then-current condition. Sister also wanted to be able to check the Bonita property periodically, to ensure that it was not being damaged. The court issued an amended TRO with the same terms as the August 2022 TRO, except that this new TRO (1) did not require Brown to move out of the Bonita property; (2) authorized either a third party or Sofris, "as a friend of the court," to video and document the condition of the Bonita property before Brown could move back in; and (3) authorized sister to have a "real estate representative"

5

conduct weekly walk-throughs of the Bonita property with 24 hours' advance notice and while Brown's daughter was at school (the amended TRO).

### D. *Post-ruling orders*

After the October 2022 hearing, Sofris and Brown filed declarations unattached to any request for relief that set out facts not presented at the hearing.

At the continued hearing on November 1, 2022, the court again continued the matter until January 11, 2023. The court kept the amended TRO in force.

### E. *Appeals*

On October 21, 2022, Brown filed a notice of appeal challenging the trial court's disqualification order.

On December 1, 2022, Brown filed a notice of appeal challenging the amended TRO. The trial court took the January 2023 hearing on the permanent restraining order off calendar.

We consolidated the two appeals.

## DISCUSSION

Brown challenges the trial court's order disqualifying Sofris as well as two provisions of the amended TRO. We review disqualification orders and restraining orders solely for an abuse of discretion. (*City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 848 (*Cobra Solutions*) [disqualification order]; *In re Marriage of D.S. & A.S.* (2023) 87 Cal.App.5th 926, 933 [restraining order].) In so doing, we review any subsidiary factual findings for substantial evidence (*Cobra Solutions*, at p. 848) and independently review any subsidiary legal questions (such as whether a party has standing to seek disqualification of another party's attorney) as well as the application of law to undisputed facts (*A.F. v. Jeffrey F.* (2022) 79

6

Cal.App.5th 737, 745 (*A.F.*) [standing is a legal question]; *Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1357 (*Great Lakes*) [same]; *Cobra Solutions*, at p. 848 [application of the law to undisputed facts]).

## I.     Order Disqualifying Sofris as Brown's Attorney

A trial court has inherent as well as statutory power to disqualify counsel as part of its authority to control court proceedings.  (*Cobra Solutions*, *supra*, 38 Cal.4th at p. 846; Code Civ. Proc., § 128, subd. (a)(5).)  An attorney owes his client a duty of loyalty.  (*People ex rel. Department of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1146-1147 (*SpeeDee Oil*).)  An attorney who "[j]oint[ly] represent[s] . . . parties with conflicting interests impairs each client's legitimate expectation of loyalty," and thereby breaches that duty.  (*Great Lakes*, *supra*, 186 Cal.App.4th at p. 1355.)  This is why our Supreme Court has held that a "more stringent per se rule of disqualification applies" "if an attorney . . . simultaneously represents clients who have conflicting interests."  (*SpeeDee Oil*, at p. 1147; *Cobra Solutions*, at p. 846.)

Although a trial court may disqualify counsel on its own initiative (*Asbestos Claims Facility v. Berry & Berry* (1990) 219 Cal.App.3d 9, 27, fn. 6 (*Berry*) ["a trial court has the power to disqualify an attorney on its own motion"]), a motion to disqualify may only be brought by someone with "standing"—that is, by someone with a "legally protected" or otherwise "sufficient" interest that would be adversely affected if the attorney at issue was *not* disqualified (*Great Lakes*, *supra*, 186 Cal.App.4th at p. 1356; *Jarvis v. Jarvis* (2019) 33 Cal.App.5th 113, 132).  A movant may establish standing by showing that she is (1) a current client of the attorney (*Great Lakes*, at p. 1356); (2) a prior client of the

attorney (*ibid.*); (3) a person with whom the attorney still owes a duty of confidentiality (*DCH Health Services Corp. v. Waite* (2002) 95 Cal.App.4th 829, 832 (*DCH Health*); *Moreci v. Scaffold Solutions, Inc.* (2021) 70 Cal.App.5th 425, 432-433; *Dino v. Pelayo* (2006) 145 Cal.App.4th 347, 353); or (4) a person with some other "personal stake" in the attorney's continued representation of his client in the ongoing litigation (*A.F.*, *supra*, 79 Cal.App.5th at p. 746 [father has a "personal stake" in his child's best interests, which conferred standing to move to disqualify attorney representing child and other parent]; *Jarvis*, at pp. 131-133 [partner in partnership has a "stake" in whether attorney is too conflicted to act on the partnership's behalf]).

Although Brown did not raise the issue of standing before the trial court, we conclude that sister—as a person acting on father's behalf—had standing to object to Sofris's continued representation of Brown in litigating the restraining order. Sofris was representing Brown in the current proceedings. Sofris was also the person who, as trustee of the RJN Trust, had disbursed money from that trust based on orders from "the family," which meant Sofris owed father—as one of the settlors of that trust—fiduciary duties. (*Estate of Giraldin* (2012) 55 Cal.4th 1058, 1062 ["[w]hen the trustee of a revocable trust is someone other than the settlor, that trustee owes a fiduciary duty to the settlor . . ."].) Father was the person who, due to his need for 24/7 assisted care and the durable power of attorney, had charged sister with seeking to have him named as a protected person in this case. (Accord, *Riehl v. Hauck* (2014) 224 Cal.App.4th 695, 701 [parent may seek restraining order on behalf of a child].) Father's relationship with Sofris through the RJN Trust meant that Sofris owes him a duty of confidentiality

and also gives father a "personal stake" in not having Sofris violate that duty. What is more, because Sofris as trustee effectively represents the settlor vis-à-vis the trust, Sofris was simultaneously representing both Brown *and father* in the same proceeding where the latter was seeking a protective order against the former. Such dual "representation of clients whose interests are directly adverse in the same litigation" is, as our Supreme Court has said, "[t]he most egregious conflict of interest." (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1147.)

Brown resists this conclusion with a plethora of seemingly self-proliferating arguments, which we have nevertheless wrestled into six different buckets.

First, Brown argues that Sofris was not going to be a witness and did not have a financial stake in the outcome of the case. This argument partly contradicts Brown's own declaration before the trial court, in which she indicated that Sofris "may" be a witness. Putting that aside, this argument is also beside the point. What makes Sofris proverbially radioactive are his simultaneous duties to two parties on opposite sides of the "v." in this case; whether or not there are *additional* grounds to disqualify him is neither here nor there.

Second, Brown contends that there is no conflict. To begin, Brown points out that she asserted in her post-order declaration that Sofris disbursed the RJN Trust money at *her* behest, and that she was the beneficiary of that trust. Thus, Brown concludes, Sofris was not taking orders from father. But that assertion contradicts what Sofris told the trial court at the October 2022 hearing, where he said "the *family* asked" him to disburse the funds. Sofris's assertion also does not alter the existence of the fiduciary duties Sofris owes father by virtue of

9

their trustee-settlor relationship.  Next, Brown argues that the conflict is irrelevant because what mattered to this restraining order case was who *occupies* the property at issue, not who *owns* it.  We reject this argument because the disqualifying interest stems from simultaneous and contradictory duties, which exist regardless of the nature of the dispute.  Further, Brown posits that the conflict is too speculative.  Although "hypothetical" and "speculative" conflicts will not justify disqualification (*Great Lakes*, *supra*, 186 Cal.App.4th at p. 1358-1359; *DCH Health*, *supra*, 95 Cal.App.4th at p. 833; *In re Cody R.* (2018) 30 Cal.App.5th 381, 390), the conflict here is neither hypothetical nor speculative:  Substantial evidence supports the explicit and implicit findings by the trial court that Sofris was the trustee of the RJN Trust, that he disbursed money on orders from "the family," that father was a settlor of the RJN Trust, that Sofris owes father fiduciary duties, that father was—through sister—suing Brown, and that Sofris was representing Brown in that lawsuit.

Third, Brown contends that she was entitled to advance notice and an evidentiary hearing on the issue of disqualification.  She is wrong.  Sister raised the issue of disqualification immediately after the possible conflict came to her attention, which was during settlement talks immediately prior to the October 2022 hearing.  Brown did not complain of lack of notice at that time.  There was also no need for an evidentiary hearing, as no facts were disputed *during the hearing* (although Brown inserted additional, contradictory facts into the record *after* the hearing).  More to the point, Brown never asked to call any witnesses or to introduce any documents; as a result, she has forfeited her objection.  (*In re Marriage of Cohen* (2023) 89

10

Cal.App.5th 574, 582.)  Because Brown had notice and an opportunity to be heard, her due process rights were also not violated.

Fourth, Brown argues that the evidentiary foundation for the conflict was inadmissible because sister first learned of Sofris's role as trustee of the RJN Trust during settlement talks protected by Evidence Code sections 1152 and 1154.  To begin, these sections do not create a *privilege*; instead, they create a bar to admissibility, one that can be forfeited if there is no objection (Evid. Code, § 353).  There was no objection here.  Moreover, Sofris freely admitted the very same facts during the October 2022 hearing.

Fifth, Brown argues that she expressed—again, after the October 2022 hearing—that she consented to any conflict.  Where there is a conflict due to simultaneous representation or duties between opposing parties, however, a waiver is needed from *both* parties.  (*Berry*, *supra*, 219 Cal.App.3d at pp. 26-27 [so noting].)  Here, there is no waiver from father.

Sixth and finally, Brown urges that the trial court erred by not considering the panoply of factors used to evaluate the hardship that disqualification imposes on her—namely, (1) her right to her counsel of choice, (2) Sofris's interest in representing his client, (3) the financial burden Brown faces in finding replacement counsel, and (4) the possibility that sister and father are disqualifying Sofris for tactical reasons.  (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1145 [enumerating these factors].)  Brown ignores that a court must balance these client-focused factors against "the need to maintain ethical standards of professional responsibility," and further ignores that "preserv[ing] public trust in the scrupulous administration of justice and the integrity of

11

the bar" is "[t]he paramount concern." (*Ibid.*; *Cobra Solutions*, *supra*, 38 Cal.4th at p. 846.) In this case, allowing the same lawyer who simultaneously owes duties to a person seeking a restraining order and the person to be restrained rides roughshod over the "duty to maintain undivided loyalty" and thereby "undermin[es] public confidence in the legal profession and the judicial process." (*SpeeDee Oil*, at p. 1146.) Thus, the trial court here did not abuse its discretion in concluding that the balance of factors favored disqualification.[3]

## II. Substantive Terms of the Amended TRO

Brown attacks two terms of the amended TRO—namely, (1) the provision granting sister the right to conduct weekly inspections of the Bonita property, and (2) the provision ordering Brown to stay away from the Winterhaven property.

### A. *Right to inspect the Bonita property*

The trial court did not abuse its discretion in granting sister a right to inspect the Bonita property on a weekly basis with 24 hours' advance notice. Substantial evidence supports the trial court's implicit finding that the 2014 Trust owns the Bonita property, that the trust grants the power to a trustee to maintain the Bonita property, and that sister is now the trustee of the 2014 Trust. Thus, sister is effectively the landlord of the property. The Civil Code grants landlords the power to enter premises pursuant to a "court order" as long as they give reasonable,

---

[3] Brown makes passing reference to the fact that father passed away at some point after the October 2022 hearing. Father's subsequent death does not affect the propriety of the trial court's disqualification order at the time it was made. The impact of his death, if any, on the disqualification analysis may be raised—along with other evidence bearing on the issue—in further proceedings, if any, before the trial court.

advance notice.  (Civ. Code, § 1954, subds. (a)(4), (b) & (d)(1).)  Here, the amended TRO is a court order and it also requires 24 hours' advance notice.

Brown offers two arguments in response.  First, she argues that *she* has a competing power of attorney that gives her power over the Bonita property through mother.  But sister disputed the existence of that grant of authority, and Brown was given the chance to produce evidence of that authority but did not do so; the trial court accordingly found that the authority did not exist due to a lack of proof.  That factual finding is supported by substantial evidence.  Second, Brown urges that allowing sister to conduct inspections violates the Fourth Amendment as well as her constitutional right to privacy.  She is wrong.  Where, as here, inspections comply with the Civil Code, we decline to overwrite the Code by constitutional fiat.

**B.**  ***Stay away from Winterhaven property***

The trial court also did not abuse its discretion in ordering Brown to stay away from the Winterhaven property.

Brown does not argue that this order was inappropriate *based on the evidence before the trial court in October 2022.*  Instead, she argues that it is no longer appropriate because, subsequent to that hearing, she learned that sister had sold the property to a third party in September 2022 and that third party thereafter sold it to a fourth party.  Although we took judicial notice of all of these documents, we leave it to the parties to ask the trial court to assess whether—in light of this change in ownership—there is still a need for an order restraining Brown to stay away from property in which, based on the evidence she presents to this court for the first time, neither she nor her family have any interest whatsoever.

13

## DISPOSITION

The orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT


We concur:


_____, P. J.

LUI


_____, J.

ASHMANN-GERST


14