Filed 12/26/25  Barboza v. Sherman CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| FABIAN BARBOZA,<br><br>　　　Appellant,<br><br>　　v.<br><br>RAQUEL SHERMAN,<br><br>　　　Respondent. | D085289<br><br><br>(Super. Ct. No. 22FL005650C) |

APPEAL from an order of the Superior Court of San Diego County, Christopher S. Morris, Judge.  Reversed with directions.

Antonyan Miranda and Anthony J. Boucek for Appellant.

Raquel Sherman, in pro. per., for Respondent.


Fabian Barboza appeals the domestic violence restraining order (DVRO) the family court issued against him in favor of Raquel Sherman.  He contends the court erred by using a reasonable person standard to determine whether he had disturbed her peace, issuing the DVRO without sufficient evidence he engaged in any conduct that constituted statutorily prohibited abuse, and including her fiancé as a protected party.  We reverse.

# I.

# BACKGROUND

A.  *Marital Dissolution Proceeding*

Barboza and Sherman are parties to a marital dissolution proceeding. They married in 2012 and lived together until they separated in 2022. After separating, the parties agreed to joint legal and physical custody of their children, a daughter born in 2015 and a son born in 2018.

On April 11, 2024, Barboza and Sherman participated in a mandatory settlement conference and agreed on terms to be incorporated into a marital settlement agreement. The parties' marital status was terminated on that date. Over the next few months, the parties' counsel worked on the marital settlement agreement. On August 19, 2024, Barboza's counsel sent Sherman's counsel a letter requesting additional revisions.

B.  *DVRO Request and Response*

On August 20, 2024, Sherman, acting in propria persona, filed a request for a DVRO against Barboza and identified as protected persons herself, her fiancé, her fiancé's son from a prior relationship, and the son she had with the fiancé. In a supporting declaration, Sherman stated Barboza has been verbally and mentally abusive throughout their relationship, threatened and attempted to fight her fiancé during child custody exchanges, and made disparaging and defamatory comments about her fiancé's children in the presence of the children she had with Barboza. The family court issued a temporary restraining order that prohibited Barboza from abusing or contacting Sherman and the others she identified as protected persons in the DVRO request and required him to stay 100 yards away from her. The court set the matter for an evidentiary hearing.

Before the hearing, Barboza filed a response in which he asked the family court to deny Sherman's DVRO request. In an accompanying declaration, he denied her allegations of abuse. Barboza admitted he "reacted poorly" when Sherman's fiancé "antagonized" him during a child custody exchange but claimed it "was an isolated incident" and the fiancé was not afraid of him. He denied Sherman's allegations he made disparaging and defamatory comments about her fiancé's children.

C.   *DVRO Hearing*

At the evidentiary hearing, Sherman called herself and her fiancé as witnesses. Her fiancé testified he was present at child custody exchanges during which Barboza was aggressive, shouted profanities at him, and tried to fight with him. Sherman testified she had known Barboza for approximately 19 years. She said he physically abused her while they were dating, but she did not report the abuse to police or end the relationship because he threatened to abandon her in the desert or kill her family if she did. Sherman testified that after she married Barboza, he stopped physically abusing her but started mentally and emotionally abusing her by refusing to pay for her medication and by shouting profanities at her. On cross-examination, Sherman admitted that during the marriage she directed profanities at Barboza. On redirect examination, she testified that if the court found Barboza perpetrated domestic violence against her, she wanted sole custody of the children. When asked why she requested the DVRO, Sherman responded that Barboza kept on asking for changes to the marital settlement agreement, and when his counsel sent her counsel the letter asking for more changes on August 19, 2024, she "just knew he was not going to stop, and [she] had to do it." Sherman said that by making the marital

3

dissolution proceeding difficult, Barboza "was disturbing [her] peace and [her] mental health."

Barboza called himself and his girlfriend as witnesses. The girlfriend testified she observed one child custody exchange while she was on a video call with Barboza and was present at more than 20 other exchanges. On the video call, Barboza's girlfriend observed Sherman's fiancé act "aggressively" toward Barboza while he remained "calm." Based on her observations at the other child custody exchanges, Barboza's girlfriend testified Sherman and her fiancé "seem[ed] calm" and did not "appear to be fearful of [Barboza]." Barboza testified he never physically, verbally, or mentally abused Sherman. He denied being aggressive or combative toward Sherman's fiancé and claimed the fiancé was aggressive and combative toward him. He described interactions with Sherman as "[p]eaceful" and "cordial." Barboza testified issuance of a DVRO would adversely affect his employment as a security guard and his application to become a U.S. Border Patrol Agent. On cross-examination, Barboza was hostile to Sherman's counsel. When asked whether he ever apologized to Sherman for abusing her, Barboza answered, "No." Counsel then played a recording of him apologizing to her.

The parties submitted many documents, including recordings of their interactions. As a recent example of abuse, Sherman played a recording of the child custody exchange on Rio Drive on January 20, 2023, and provided a transcript of the audio portion. During that exchange, Barboza told Sherman to "shut up," approached her fiancé, and repeatedly told him, "Threaten me again." Sherman tried to calm Barboza down as she held their son, and her fiancé repeatedly told Barboza not to be disrespectful. Barboza, Sherman, their son, and Sherman's fiancé repeatedly used foul language during the exchange.

4

In closing argument, Sherman's counsel argued that based on Sherman's testimony about the different types of abuse Barboza inflicted on her throughout their relationship, the recording of the child custody exchange on Rio Drive, the impeachment of Barboza, and his demeanor on the witness stand, Sherman met her burden to prove by a preponderance of the evidence that he disturbed her peace, and she was therefore entitled to a DVRO. Barboza's counsel urged the family court to deny the DVRO request. He argued Sherman had not met her burden of proof because her allegations of abuse were vague and did not amount to disturbing her peace, and she admitted the real reason she filed the DVRO request was that Barboza had asked for additional revisions to the marital settlement agreement the day before she filed it.

During closing argument, the family court asked counsel whether it had to apply a subjective test, i.e., Sherman's peace was actually disturbed and she remained fearful of Barboza, or an objective test, i.e., a reasonable person's peace would have been disturbed and the person would remain fearful of Barboza. Sherman's counsel responded the evidence satisfied both tests. Barboza's counsel responded the court should consider both tests as part of the totality of the circumstances.

D.    *DVRO Decision*

The family court announced its decision from the bench. It first focused on the recording of the January 20, 2023 child custody exchange on Rio Drive as what it called "extrinsic evidence" to assist it in determining which of the parties' "diametrically different positions" was more credible. The court stated:

> "I'm not sure based on what I saw in the video that that's not a Tuesday night for you folks. Okay. And the way you guys talk to each other and the way this child is screaming MF at his father

5

leads me to conclude this is your get down. This is how you guys interact, and it's so inappropriate, so over the top.

"I'm not sure I can make a finding that her subjective peace was disturbed based on that video and their history, but I can certainly find that [the peace of] an objective person, a reasonable person, a person who interacts with each other in a reasonable manner[,] . . . would have been disturbed going through what I saw on the Rio Drive video. So that element for me is met. Okay.

"I'm not sure that that's not how you guys interacted with each other all the time. If it was it's -- I just feel bad for the children. I mean, screaming MF at their father and nobody even raises -- bats an eye at that? It's their dad, and that just seems to be okay. That was like -- no one even mentioned it, and I'm looking at that video going, 'Oh, my God. You got a little child screaming MF at his father and no one tells him to stop, or it's inappropriate,' because that's just like normal behavior for that family. That's not okay. It's not okay.

"So I will find that a reasonable person's peace would have been disturbed."

The family court next "look[ed] at the totality of the circumstances." It found Barboza's "testimony was discredited" and Sherman's "testimony was credible and backed up by the extrinsic evidence." The court found Sherman met her burden of proof to obtain a DVRO in favor of her and her fiancé but not in favor of his children. The court issued standard no-abuse, no-contact, and stay-away orders for a term of two years. (See Fam. Code, §§ 6320, subd. (a) [prescribing content of DVRO], 6345, subd. (a) [prescribing term of no more than 5 years].)

## II.

## DISCUSSION

Barboza attacks the DVRO on three grounds. First, he argues the family court prejudicially erred by applying an objective rather than a subjective standard to determine whether he disturbed Sherman's peace.

6

Second, Barboza argues the record contains no evidence that would support a finding he engaged in any conduct toward Sherman that constituted the "abuse" required to issue the DVRO. Third, he argues the court had no jurisdiction to issue the DVRO in favor of Sherman's fiancé. Barboza asks us to reverse the DVRO.

A.  *Appealability and Standard of Review*

A DVRO is appealable as "an order granting or dissolving an injunction." (Code Civ. Proc., § 904.1, subd. (a)(6); *Molinaro v. Molinaro* (2019) 33 Cal.App.5th 824, 831, fn. 6.) We review a decision to issue a DVRO for abuse of discretion. (*K.T. v. E.S.* (2025) 109 Cal.App.5th 1114, 1126 (*K.T.*); *M.S. v. A.S.* (2022) 76 Cal.App.5th 1139, 1143.) A court abuses its discretion when it applies the wrong legal standard, makes factual findings not supported by substantial evidence, or reaches a decision that exceeds the bounds of reason. (*K.T.*, at pp. 1126–1127; *City of Desert Hot Springs v. Valenti* (2019) 43 Cal.App.5th 788, 793.) Whether a court applied the correct legal standard is a legal question we decide de novo. (*K.T.*, at p. 1127; *Cueto v. Dozier* (2015) 241 Cal.App.4th 550, 560.) We review factual findings for substantial evidence, crediting all evidence that tends to support the findings and resolving any conflict in favor of them. (*K.T.*, at p. 1128; *M.S.*, at p. 1144.) To obtain reversal, an appellant must show both abuse of discretion and prejudice. (*Conservatorship v. Farrant* (2021) 67 Cal.App.5th 370, 378; *In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 118–119.)

B.  *Standard for "Disturbing the Peace of the Other Party"*

Barboza's first claim of error is that the family court prejudicially erred by applying the wrong legal standard in deciding whether he had disturbed Sherman's peace. The claim has merit.

Under the Domestic Violence Protection Act (DVPA; Fam. Code, § 6200 et seq.), a court may issue a restraining order "to prevent acts of domestic violence" upon "reasonable proof of a past act or acts of abuse" (*id.*, §§ 6220, 6300, subd. (a); see *K.T., supra*, 109 Cal.App.5th at p. 1127). " 'Domestic violence' " includes "abuse" perpetrated against a spouse or former spouse. (Fam. Code, § 6211, subd. (a).) As relevant to this appeal, "abuse" means "disturbing the peace of the other party," which "refers to conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party." (*Id.*, §§ 6203, subd. (a)(4), 6320, subds. (a), (c); see *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1498.) To issue the DVRO, then, the family court had to find by a preponderance of the evidence that a past act by Barboza destroyed Sherman's mental or emotional calm. (*Hatley v. Southard* (2023) 94 Cal.App.5th 579, 592–593; *Curcio v. Pels* (2020) 47 Cal.App.5th 1, 11 (*Curcio*).)

The family court stated at the end of the evidentiary hearing that it was issuing the DVRO based on its finding that Barboza's conduct at the Rio Drive child custody exchange on January 20, 2023, would have disturbed the peace of a reasonable person even though it did not disturb Sherman's peace. The statutory provision defining " '[d]isturbing the peace of the other party' " (Fam. Code, § 6320, subd. (c)), however, "contains no language suggesting that a reasonableness standard governs" (*Parris J. v. Christopher U.* (2023) 96 Cal.App.5th 108, 119 (*Parris J.*)). By including a reasonableness standard in provisions defining other types of abuse (e.g., §§ 6203, subd. (a)(3), 6320, subd. (c)(5)) but omitting it from the definition of disturbing the peace of the other party, "the Legislature deliberately chose not to limit the DVPA's reach to conduct that would destroy the mental or emotional calm of a reasonable person." (*Parris J.*, at p. 119.) Under *Parris J.*, an objective, reasonable

8

person standard does not control the decision whether conduct qualifies as disturbing the peace within the meaning of the DVPA. "Instead, the relevant inquiry is simply whether the person against whom the DVRO is sought engaged in 'conduct that, based on the totality of the circumstances, destroy[ed] the mental or emotional calm *of the other party.*' " (*Id.* at p. 121, italics added.)[1] By using a purely objective test, the family court applied the wrong legal standard in issuing the DVRO.

Application of the wrong legal standard when issuing a discretionary order is an abuse of discretion and subjects the order to reversal. (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733; *Rodriguez v. Menjivar* (2015) 243 Cal.App.4th 816, 820.) Reversal is required if there is a reasonable probability that in the absence of the error the appellant would have obtained a more favorable result. (*In re Marriage of F.M. & M.M., supra*, 65 Cal.App.5th at p. 118; *Priscilla N. v. Leonardo G.* (2017)

---

[1] To the extent *Parris J.* suggests a DVRO may issue based on conduct that disturbed the peace of the party requesting the DVRO but that would not have disturbed the peace of a reasonable person, it adopts a purely subjective test in conflict with other cases. For example, *Curcio, supra*, 47 Cal.App.5th at page 13, rejected the notion that a DVRO "may issue based on any act that upsets the petitioning party." The court noted the social media post at issue "may have made [Curcio] fear for her career," but concluded it did not "rise to the level of destruction of Curcio's mental and emotional calm, sufficient to support the issuance of a [DVRO]." (*Ibid.*) Similarly, *K.L. v. R.H.* (2021) 70 Cal.App.5th 965, 981 held that "calling K.L. a 'dick' and failing to show up for custody exchanges [was] not sufficient to disturb anyone's peace" and "simply d[id] not rise to the level required by the law" for issuance of a DVRO in favor of K.L. We need not choose a side in this conflict to decide this appeal. The question for us is whether a court may issue a DVRO when it finds the conduct at issue would have disturbed the peace of a reasonable person but did not disturb the peace of the party requesting the DVRO. As we explain in the text, the answer to that question is *no*.

17 Cal.App.5th 1208, 1215–1216.) There is such a probability in this case. The family court found that although Barboza's conduct during the recorded child custody exchange on Rio Drive would have disturbed the peace of a reasonable person, it could not find Sherman's "subjective peace was disturbed based on that video and their history." The court found the video depicted "how [the parties] interact" and "normal behavior for that family."[2] "In this case, there is no need to speculate what the family court would have done in the absence of its error because it is clear from the record." (*Priscilla N.*, at p. 1215.) Had the court applied the correct legal standard, i.e., whether, based on the totality of the circumstances, Barboza's conduct destroyed *Sherman's* mental or emotional calm (Fam. Code, § 6320, subd. (c)), it would have denied her DVRO request. We must therefore reverse the DVRO.

C.    *Evidence of Abuse*

Barboza's second claim of error is that the record contains no evidence sufficient to support a finding he committed "abuse" within the meaning of the DVPA. The gist of the claim seems to be that his conduct toward Sherman, when assessed objectively, does not constitute abuse. We need not decide the issue. The only type of abuse at issue at the evidentiary hearing was "disturbing the peace of the other party." (Fam. Code, § 6320, subd. (a).)

---

[2]    Sherman contends her reaction to Barboza's conduct during the child custody exchange on Rio Drive "does not mean his actions did not subjectively destroy her emotional peace or calm." For the family court to have found otherwise "just because of an, in the moment, lack of reaction by someone, who by all accounts is likely accustomed to extreme behavior and abuse at this point, seems unfair and irresponsible" to her. These assertions, unaccompanied by any analysis with citations to the record and legal authorities, do not suffice to show "the evidence compels a finding in [Sherman's] favor as a matter law." (*Estate v. Berger* (2023) 91 Cal.App.5th 1293, 1307.) We thus must accept the family court's finding.

10

We explained above that to obtain a DVRO based on that type of abuse, Sherman had to prove Barboza' conduct destroyed *her* mental or emotional calm, not simply that it would have destroyed the calm of a reasonable person. (*Id.*, subd. (c); *Parris J., supra*, 96 Cal.App.5th at p. 121.) As Sherman's trial counsel argued, "[A]t a minimum, the [c]ourt needs to make a finding that there's been a disturbance *of my client's peace*." (Italics added.) The court could not make such a finding based on the conduct at issue, which it found was "normal behavior for that family." Hence, Sherman was not entitled to a DVRO regardless of whether Barboza's conduct, considered objectively, constituted disturbing the peace.

D.      *Inclusion of Sherman's Fiancé as a Protected Party*

Barboza's third and final claim of error is that the family court lacked jurisdiction to include Sherman's fiancé as a party protected by the DVRO because her fiancé is not a "person" to whom the DVPA authorizes a court to grant a DVRO. Barboza is correct that a court may grant a DVRO only to a current or former spouse, current or former cohabitant, relative, or other person described in Family Code section 6211. (*Id.*, § 6301, subd. (a); *Riehl v. Hauck* (2014) 224 Cal.App.4th 695, 700–701.) Nothing in the record suggests Sherman's fiancé meets any of those descriptions. But he did not file the request for the DVRO at issue. Sherman did, and she could do so as Barboza's former spouse. (Fam. Code, § 6211, subd. (a).) When the family court granted her request, it had discretion to add "other named family or household members" as parties protected by the DVRO. (*Id.*, § 6320, subd. (a).) Since Sherman had listed her fiancé as a member of her household, the court had statutory authority to add him as a protected party. A consequence of our reversal, however, is that there is no longer a DVRO to which to add him as a protected party. Barboza's objection to the addition is

11

therefore moot.  (See, e.g., *Cohen v. Superior Court* (2024) 102 Cal.App.5th 706, 714 [issue is moot when events occurring after case initiation make it unnecessary for court to decide issue].)

III.

DISPOSITION

The DVRO is reversed, and the matter is remanded to the family court with directions to enter a new order denying respondent's request for a DVRO.  Appellant is entitled to costs on appeal.


IRION, Acting P. J.

WE CONCUR:


BUCHANAN, J.


CASTILLO, J.